argument, which is Dilts v. Todd Shipyard. And then we will take, after this argument, we will take a brief. Let me have one more. Well, I know, but we're going to take a brief recess so that we can hook up the telephone communication with one of the lawyers in the Gonzales-Benton court case. So we'll now hear Dilts v. Todd Shipyard. If it pleases the Court, I'm James Leggett and represent the appellant, Shirley Dilts, in this matter. I would like to reserve five minutes and we'll try to keep You may, but you can help to keep track of your own time. Thank you, Your Honor. This case originated when Henry Dilts made his claim on February 1999. He developed lung cancer. He ultimately died in July of 1999. His personal representative substituted on his claim in October of 1999, and Shirley Dilts' widow filed his widow's claim in November of 1999. In reviewing the cases, it seems that there's an awful lot of cases on the effect of 33 U.S.C. 933G sub 1 and 2 in the courts. And the reason and pose the question, why? Why? And the reason is because the developing outcomes are wrong with a capital W. And they're wrong when you take a settlement or a partial settlement in an asbestos environment, which is a unique piece of litigation. As Justice Rehnquist indicated, it's an elephantine mass litigation of asbestos. It does not lend itself to 933. In fact, it confused the Board and confused the hearing officer, the administrative law judge, because if you look at 933G, there's two subparts, sub 1 and sub 2. The hearing officer, Judge Malafi, rested his decision on 933G2. And that's at page 24 of the proceedings. There was he rested his decision to dismiss the claim that there was no notice to the employer, and in that case there was no finding of entitlement. The Board, at page 283, based its decision on 933G1. When it's at page 283, it said it was not the lack of notice, says at page 286, but lack of assigned approval. And the Board assumes there was entitlement. When was the notice given? The question of the notice was, there is no definition in the statute of what notice is. But there was no written notice sent by me to the employer. The asbestos litigation was handled by another attorney, mass court litigation, consolidated in Pennsylvania in an MDL action, both with and without bankruptcy. What was the request for approval of settlement? The request for approval of settlements were made after they became disclosed at the oral hearing, and they were submitted in August of, I believe, 2000. They're attached to the pleadings. But I want to get But I thought that there was – I thought the chronology was that it was after the hearing that the first request for approval was made. That's true. But that's under 933G1. That's still under 933G2. Well, I'm just trying to figure out why they went on two different grounds, but that was because they were both – it seemed to me they were both correct as of the time. The problem that gives rise – and one of the issues we brought to this Court is the denial by Judge Malafie of our subpoena to find out when the employer and its insurance carriers, and there were a number of them, when they knew about these mass settlements, which were a few hundred dollars. I mean, it's $3,200. That doesn't make any difference. Oh, I think it – I think the statute says, you know, when the employer knows, that's good enough. The statute doesn't say a word about knowledge. It only talks about the total. Actually, the case law in the statute, and I cited them, is that the notice, if they participate in the settlement – and they talked about this in the Cowart case – if they participated in the settlement, if they noticed that – Which this employer did not know. I didn't understand. Which this employer did not participate in the settlement. How do we know? I was denied the ability to get that information. There is no evidence in the record, Your Honor. Right. Okay. There's an allegation. But what does, you know, having to know have anything to do with the requirements of the statute? Under the Section 2, it says an employee, not someone entitled to benefits, an employee provides notice. That notice, there can be waiver, participation, finding of notice by actual knowledge on the part of the employer. That was discussed in Cowart. We subpoenaed those records from the employer. The administrative law judge refused to issue the subpoena. So there's no evidence of whether or not the employer and its insurance carrier participated, knew, or waived the requirement for notice. This was a mass tort asbestos litigation, the Jimmy Barber case in Mississippi. It had been consolidated for MDL purposes in Pennsylvania. So the question, even though I didn't know about it, and maybe trial counsel didn't know about it, that isn't the question. The question, did the employer and the employer's insurance carrier participate or know about these settlements? The question was asked in the hearing not by me, but by one of the employer's insurance carrier counsels. So we were not allowed, and that's why one of the issues here is whether it should be remanded for that subpoenaed issue. I'm not understanding, quite understanding your argument. I don't think the Board really understood either. Yeah. What's the strongest authority in the field of asbestos litigation that somehow the statute works differently in mass tort cases than in other cases? Okay. The way it works differently is that the individual is asking you what authority is there that recognizes that there's a difference in these mass tort cases. The authority is dealing with the bankruptcy settlements. And that was, I believe, so I can find that, I believe it was Taylor and also Ortiz v. Fiberboard. And it talks about where the individual does not have the power to negotiate a settlement, that it's impressed upon them or it's established by an order of the court. That specific case dealt with a bankruptcy. In this case, there were bankruptcy Fiberboard. I'm sorry. What cases are you talking about? I was talking about the they talked about these in Cowart v. Niklos that they talked about the bankruptcy area. There was not really disputed that in the bankruptcy area that a settlement that was approved by a bankruptcy judge would not trigger 933-1 that required preapproval by the employer. Right. Right. So my analogy is when you take an MDL or a mass tort litigation, and the questions talked about by Justice Blackmun deals with whether you can actually have an individual plaintiff have any control over those settlements or not. Talking about the dissent? Pardon? The dissent, dissenting opinion? Yes. In Cowart, that's your best authority? No. That just talks about the inappropriateness of the application of 933-G-1 bargains action. What I was referring to was let me find it in the briefs so I can give you the actual case. I can't find it at the moment. I believe it was discussed, and I think it was referred to as the Taylor and the Ingalls case by Justice Blackmun and his dissent. But the key factors that were found by Justice Rehnquist in the Ortiz v. Fiberboard case about the mass, Elephantine mass of asbestos cases, and that not being even, and Justice Blackmun talks about the individual not being able to actually have a role or function in denying or accepting a settlement when you have a mass case, I believe places this into the situation of the same as a bankruptcy case, because these are not, I mean, the settlements were like $400. I listed them out. I can see that you could make that argument if you had tried to get approval of the settlement and had been refused. But I'm not quite sure how you could make that argument when you never tried. Well, there was an attempt to get the settlements approved. But that was late. After the fact. Well, that assumes a fact. They were sent to the employers, and actually many after have been done this way. But they were sent to the employer and the insurance carriers. Also, there was filed a copy of the trial attorney's letter in the settlement from the defense saying they were contingent upon the employer's approval. The $3,200, all of those settlements at a few hundred dollars apiece. The letter said that, but the release didn't say that. Well, it's not uncommon in releases to say one thing and to have the agreement of the parties say another. I've been doing this a long time. What controls? What controls is the intent of the parties. And if we had we submitted the evidence that was contingent upon the approval, the employer did not reject them, did not accept them. This is the problem that both the majority and the dissent in the Cowork case recognized. Previous to that time, if an employee or a board can get a compensation, did not get compensation, there was no requirement to get approval in advance of a settlement. There was just a requirement to give notice. The Cowork case, the way it came down, said that it didn't matter. Even though you're not entitled to compensation, which said there's a, and in that case, the defense attorney admitted that they knew and participated in the settlement and they just held it out as a hook to hammer the victim. And they used it to hammer the victim. This is an incongruous result. As Justice Blackmun says, it didn't reanalyze the real purpose of the Longshore and Harbor Workers' Compensation Act. It's to compensate. In this situation, there had been no finding that there was an entitlement to compensation. There was a denial of a subpoena to find out if they had knowledge or waived notice of these minuscule settlements or de minimis settlements. Finally, and if you don't accept the classification of asbestos as a unique form of litigation, which I think it's hard not to do that with reading the papers and watching the cases. However, there is a question of whether the delegation of, you have to remember the board made its decision based upon 933G paragraph 1, not 2. So paragraph 1 requires that there be entitlement to benefits. And they made their, to delegate to the employer unfettered discretion to ignore, as they did in this case, the request for approval, to deny or to approve is inappropriate and it's unconstitutional. And when you take a situation where there were a lot of cases cited talking about you can delegate authority to waive protections for a protected class, and that's okay. The union cases, the case where there's land, where the land is spoken for by the governor. But when you delegate the authority to the fox, from whom the legislation is intended to protect the sheep, then you cross the line. And in this situation, I believe they crossed the line as to the old adage we're all familiar with, the scorpion and the fox going across the river. And the scorpion talks the fox into letting him ride on his back. And he promises he won't sting him. And you get halfway across the river and the scorpion stings the fox and they're going down to drown. And the fox says, you said you wouldn't do it. He said, what do you mean? I'm a scorpion. I can't change my character. And that's what they've done here. And when you, and I believe that's an unconstitutional delegation and a violation of due process. I believe I got five minutes. Yeah, you've got about five minutes left. Thank you. May it please the Court, I'm Russell Metz. I represent Todd Shipyards in this matter. And as the Court has apparently surmised, the issue in this case is whether or not the claimant appellant appropriately requested and received a written approval of settlements to which he entered into agreements prior to notifying the employer of those settlements. In point of fact, we had a formal hearing in this case before an administrative law judge on June 19 of 2001, which was the first notification to the employer and to its various carriers, several of them, that in fact the plaintiff had entered into settlements in the year prior and ongoing up to the time of the hearing. That was not written notice or notice given by the plaintiff appellant to the employers pursuant to Section 33G. What about his point about, well, you know, discovery? They could have shown maybe notice earlier. Well, the ALJ dealt with that. There was a subpoena request to one of the insurance carriers, and that appears in the record, Your Honor, not to Todd Shipyards. Be that as it may, the horse is already out of the barn. I think that was what the judge more or less decided. The question would have been whether or not the employer or its carriers knew about these settlements or even participated in them. In fact, the Cowart case, which is dispositive in this matter, dealt with that very same issue. In that particular case, the employer actually participated in the settlement, and not only that, they funded that settlement in Cowart and then came back and asserted the 33G bar against the claimant in that case and prevailed in front of the Supreme Court. We don't have any of those facts here. It's supposition on the part of the claimant that such evidence might exist, but even if it did exist, it would not make any difference to the result in this particular case. I am not going to. But the concern. Tell me how you understand the concern of the dissent in Cowart. I'm sorry? The concern of the dissent in Cowart was that there could be a withholding of approval to defeat the claimant's right to withhold. Well, that was also discussed in the majority opinion as well, and that may occur from time to time. But it's not always the case. There's no reason to believe that it would have been the case here. The question of whether Mike's ---- There was reason to believe that it was the case in Cowart. Is that your point? Well, certainly in Cowart, yes. In this case, it would be pure speculation to assume that Todd Shipyards or one of its carriers would withhold consent just to disadvantage the claimant. I mean, I've been doing this a while. I know that employers do approve of settlements from time to time. Not always. It depends on the circumstances. But in order to determine what the circumstances are upon which to base a decision, you have to be given notification and an opportunity to do that. That wasn't done here. The settlements were fully executed in a number of cases as far back as June of 2000. And it wasn't until August of 2001 did the claimant, through her attorney, begin to ask for approval. Tell me this. You do this kind of litigation routinely? I do, Your Honor. It's my recollection that this kind of approval, back when I was a state court judge, but this kind of requirement of approval by the employer of third-party settlements is pretty standard in these kinds of where workers' comp and similar systems. They are. They are. Is there any, after Cowart, has there been any movement to make statutory changes in these? Not to my knowledge. After Cowart, these sorts of cases never come up for obvious reasons. Disposed of it. Exactly. I don't want to take up too much more time because the Director is here to argue the constitutional issues, so I will defer to Mr. Flynn on those points. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, I am Mark Flynn, appearing for the Director, Office of Workers' Compensation Programs, and I am also arguing on behalf of the intervener, the United States, who joined with the Director in filing a joint brief upholding the statute's constitutionality. At the outset, I would like to state that we agree with the Benefits Review Board that the constitutional issues raised by Petitioner here are not presented by the facts of this case and do not need to be addressed by the Court. In fact, under the doctrine of avoidance, should not be. Mrs. Diltz's due process arguments focus on whether standards were provided to the employer and carrier for purposes of making the approval decision. She's not entitled to raise this argument because she never made a request for approval before entering into the settlement, and therefore there was no decision by an employer or carrier. She was not injured by the absence of standards in the statute. She was injured by her own failure to seek approval within the appropriate time under the statute. Are you making a standing argument or something else? I think it has both elements of standing and elements of the doctrine of avoidance. But, in fact, what we're saying is you shouldn't be able to raise a constitutional question that you easily could have avoided. It could have been avoided if the employer had given its approval. More than that, what she's talking about is there should be standards for the decision, but that's really irrelevant in this case because there was no decision. The forfeiture rule is based on the absence of the request for seeking approval. But, nonetheless, I'm not here just to argue that point. So I would like to address the constitutional questions to some extent. There was not much argument on that point. But particularly with respect to the delegation doctrine. But let me just briefly recount Section 33 and its purposes. You know, it's the workers' comp statutes are quid pro quos, which balance employer and employee interests. The Court's well familiar with that. And, of course, that general quid pro quo has been upheld a long time ago in Supreme Court decisions. Section 33, I think, is a more particularized balancing of employer and employee interests in the context of third-party claims. And Section 33 permits employees to both seek longshore benefits and to sue third parties. When they recover from third parties, the employer is entitled to an offset, but nonetheless remains liable for excess benefits. As the Cowart decision explained, because the employer retains this excess liability, the employer has a direct interest in any settlement that reduces but does not totally eliminate its liability. And for that reason, there's Section 33G, which Cowart explains its purpose is to protect the employer from its employee accepting too little for the cause of action, which would deprive the employer of the appropriate set-off. So in response to Petitioner's discussion that the Longshore Act is an employee beneficial statute and it should be construed in light of that, that most certainly is generally true. But a statute doesn't achieve its broad aim at all costs. And the Supreme Court has explicitly said that Section 33G is an employer protective provision. Can I ask you the same question that I asked your colleague? And that is, is there any ñ because there is a risk here of manipulation and of taking advantage and forcing the plaintiff to make a settlement that is not particularly desirable and to then get off the hook because of lack of approval. Has there been any move to change some of these statutes to accommodate for that? I'm not aware if there has been any move. There's been no changes to the Federal statute, and I don't think there have been any seriously considered changes. But I actually haven't looked into that. If I'm wrong about that, I can let the Court know. But I think it's important to remember that, yes, there is that danger. As Mr. Mess explained, there wasn't a danger here because there wasn't a request. And Cowart talks about that. The countervailing consideration is that there is an incentive for employers to give approval to settlements because that settlement is in a recovery which offsets their liability for excess compensation under Section 933F. So an employer may well say, well, sure, this is a good deal, this is a good idea, it will ultimately reduce my longshore liability. Whereas if the employee decides in light of the disapproval not to take the settlement, the employee might go ahead with the tort action and lose, and then there would be no offset whatsoever. So this is certainly not a matter of this is something that could pose dangers. Congress could change it if it wants to. It's certainly not a matter of constitutional dimension, and Cowart has settled the statutory question. On the question of whether there is an undue delegation, our response is there's no delegation of legislative power whatsoever in this case. I think Petitioner acknowledged there's lots of cases in which a statute contains a condition based on private consent or waiver and tries to distinguish those cases because somehow this, the Longshore Act, it should only be cases in which the person who has the veto or the waiver is the person protected, and the Longshore Act protects only employees. But here, as I have explained, Section 933G protects employers. But when the statute gives the employer the right to make this decision, it is not giving them the right to make law. The employer does not make law or create legislation when it decides whether to approve a settlement. It's simply acting in its own interest and its action triggers the statutory rule, which is specified in Section 33G. It's no different than the employee's own decision whether to enter into the settlement, which also triggers a certain rule under Section 33G. I would submit the delegation principles are just not relevant here at all. And this Court's recent decision in the RUI-1 court case involving Berkeley's living wage statute supports that. We sent a 28-J letter about that. But it held that in an opt-out provision for collective bargaining agreements, there had been no delegation of legislative power to unions, and unions were not legislating when they entered into these opt-out provisions. They were merely exercising their own interests. And that is just as true here. The employer is simply, if the employer acts on the request, they're simply exercising their interest in the matter. As far as it's sort of difficult to tell whether there's a substantive due process claim here. If there is, there's the presumption that's accorded to economic legislation that balances burdens and benefits of economic life, and that presumption is one of constitutionality. There's a heavy burden on the challenger to show that it's irrational or arbitrary. So I think our response on the substantive due process challenge boils down to two things. One, there has really not been a showing here that there are burdens that are so great and so extreme and so different from what the rational, employee-protective purpose of Section 33G generally, that it raises a matter of constitutional dimension. And secondly, this is whether Section 33G fits the asbestos concept, asbestos litigation perfectly, or whether it needs to be fine-tuned or calibrated, is really a question for the legislature. This is a very complicated and difficult matter, and it's one that needs the benefit of policymakers, not a constitutional evaluation. I don't think I really have anything else affirmatively to say. If there are questions from the Court, though, I don't appear to be any questions. Thank you. Thank you very much. If it pleases the Court, this is Jim Leggett again. I did take the opportunity to find, at page 13 of the brief, the citations dealing with the waiver requirements on 933G and the cases of Robinson. Of which? Of the blue brief? The appellant's brief, Your Honor. The blue brief or the reply brief? Our opening brief. Okay. Thank you. They're very short, page 13, last paragraph, citing the Dudley v. O'Hearn case and the And just so that there is also cited in there, just for reference for the Court, settlements that are contingent on employer's approval. The Board has approved a cover letter as establishing the contingency and satisfying the requirement for the approval of the employers of the settlements in Smith v. Jones at 33 BRBS 155, a 1999 case. And they went just the opposite in Barnes, case 30 BRBS at 193. So it's open. In this case, I believe the key on whether it's the asbestos cases are unique, is what the Supreme Court said in Reed v. Yaka, or AKA, as cited in our reply brief, 83 Supreme Court, 1349. It indicates that the Longshore and Harbor Workers Act must be liberally construed to avoid harsh and incongruous results. In this situation with an asbestos where the plaintiff or the victim has no real control over mass settlements and they're minuscule in relation to the benefits that are available, it's incongruous to have those bar their recovery. In this situation, the employer and the insurance carriers were notified before these settlements went in by me with the caption of the Mississippi case, where it was, what was going on. And so I believe it's important when you look at what the grounds were for Judge Malafi to dismiss the case, lack of notice, that the subpoena be issued and we find out if really, in fact, they had a lack of notice. Secondly, the State workers' compensation area in which Your Honor asked the question, there is no requirement for preapproval of settlements. But if they're not preapproved, the State is not foreclosed from recovering the monies from the victim and from the other party, the third party. It's similar in this case with the offset requirement that this Court found in Chavez and in Gillian that it was, the employer was adequately protected by the offset provisions of the statute, just going to subsection F, the ones below. But on constitutionality, I think it's important to look at whether the delegation is really a fiction. One of the purposes of due process is to require that if there is delegation, the Court must have some guidelines in order to measure whether delegation is an abuse of discretion, whether the decision actually made by the employer, whether it is right or wrong. The purpose of 933 was supposedly to prevent some kind of a coercion between a third party liable person and the employee to the disadvantage of the employer. In this situation, that, there was no evidence on it, but it's certainly improbable where you have an ongoing mass litigation. The settlements were found in the bankruptcy case, that it was not such that it put the employer at risk because they were approved by the judge. These cases, the minuscule settlements were all approved by a trial, by the mass court trial judge. The individual did not really have any control over them. To bar recovery of this widow and this worker from the purpose of the statute to provide prompt compensation to these people is incongruous. And it's unconstitutional to allow the employer to be the lynchpin to make that determination. There's no guideline for the court to review. Did the employer wait too long? Did the employer, were they frivolous in denying it? What was the, was there money there from, was the defendant solvent, the third party defendant? What were the substance of it? It's not just the black and white yes or no. And so we're asking the court to be. Kennedy. Just out of curiosity, are there other actions still pending against third parties where there could be further recovery? Yes, Your Honor. As a matter of fact, we've been submitting regularly, and one of the issues we asked the Board to keep in the file is we had submitted to the Board additional requests for approval of additional settlements which have been, which were ignored. There's been never a response to a request for approval of a settlement. We're just, we've sent another one out. On those, your position, you've given notice to the employer? Yes. Yes, we have. And they've just ignored them. Just like they did the ones that we sent in August with the contingency letters. They said the settlements were contingent upon their approval. They didn't send back and say we disapprove them. They didn't, they just ignored them. Thank you. I'm down to nine seconds. Thank you.  Thank you. The case just argued is submitted for decision.
judges: Schroeder, Browning, Tashima